AAB TRANSPORT, INC
     Plaintiff,

v.

BERKSHIRE HATHAWAY DIRECT
INSURANCE COMPANY,

     Defendant.

_____/

IN THE CIRCUIT COURT OF THE 20TH
JUDICIAL CIRCUIT IN AND FOR
CHARLOTTE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.: 25001839CA

## COMPLAINT FOR BAD FAITH

**COMES NOW**, the Plaintiff, AAB TRANSPORT, INC, by and through its undersigned counsel, and sues the Defendant, BERKSHIRE HATHAWAY DIRECT INSURANCE COMPANY,, and would allege as follows:

1.    This is an action for damages which does not exceed SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), exclusive of interest, costs and attorney's fees, and otherwise within the jurisdictional limits of this Court.

2.    At all times material hereto, Defendant, BERKSHIRE HATHAWAY DIRECT INSURANCE COMPANY ("BERKSHIRE"), is a Florida corporation authorized and doing business in MIAMI-DADE County, Florida.

3.    At all times material hereto, Plaintiff, AAB TRANSPORT, INC,, owned property insured by Defendant located at 4352 EL JOBEAN ROAD, Port Charlotte, FL County, Florida.

4.    That at all times material hereto, Plaintiff had a policy of insurance from BERKSHIRE, Policy No. N9BP075587, on Plaintiff's Property, for date of loss of September 28, 2022 (hereinafter the "Policy"), which afforded various types of coverages including coverage for damage to building, other structures, business personal property and for business interruption.

5.    Defendant assumed all responsibility under the Policy.

1

6.      The Policy was issued to AAB TRANSPORT, INC in Charlotte County, Florida, and the policy covers real, and personal property located in Charlotte County, Florida. As such, venue is proper in Charlotte County pursuant to Fla. Stat. § 47.011.

7.      The Policy was in full force and effect at the time the property suffered a loss causing damage on or about September 28, 2022 ("the Loss" or "the Claim").

8.      AAB TRANSPORT, INC timely notified BERKSHIRE of the loss and BERKSHIRE assigned Claim No. N9BP075587-001-001 to the Loss.

9.      BERKSHIRE investigated and adjusted the Loss through its duly authorized representatives and adjusters.

10.     At all times relevant herein, BERKSHIRE's adjusters and representatives were agents, employees, representatives, insurance claim adjusters, engineers, and experts employed or contracted by BERKSHIRE.

11.     At all times material hereto, BERKSHIRE's adjusters and representatives acted within the course and scope of their employment for BERKSHIRE.

12.     BERKSHIRE wrongfully failed and/or refused to timely tender full insurance monies, undisputed or otherwise, due and owing to the Plaintiff.  Following the carrier's woefully lowballed initial claim determination and payment, the carrier continued to unreasonably delay and frustrate the appraisal process.  The insured filed a Civil Remedy Notice hearing Filing number 673712 on or about February 7, 2023 and demanded a cure for the bad faith claims handling in the form of a payment of $261,783.24. BERKSHIRE failed to cure this bad faith claims handling defect within the statutory cure period.

13.    This matter was then sent to appraisal and on or about May 22, 2023 and appraisal award was signed on May 22, 2023. The appraisal award resulting in a verdict/award in favor of the Plaintiff in the total amount of $322,382.27 (RCV) and $314,891.53 (ACV).

14.    A true and correct copy of the Final Judgment/Award is attached hereto and incorporated herein as Exhibit "A".

15.    Prior to the Appraisal award, on or about February 7, 2023, Plaintiff filed a Civil Remedy Notice with the Florida Department of Financial Services, alleging violations of Fla. Stat. § 624.155.

16.    This filing was accepted by the Department of Financial Services and assigned File Number 673712. A true and correct copy of the Civil Remedy Notice is attached hereto and incorporated herein as Exhibit "B".

17.    On or about April 7, 2023, Defendant responded to Plaintiff's Civil Remedy Notice, denying each assertion of bad faith.

18.    The May 22, 2023 Appraisal Award established BERKSHIRE's liability for the Claim.

19.    As a result of BERKSHIRE's insufficient payment of insurance monies, delay, and improper claims handling, Plaintiff sustained consequential and ensuing damages.

20.    Plaintiffs complied with all condition's precedent to the filing of this action, including the filing of a Civil Remedy Notice with the Florida Department of Financial Services and assigned File Number 607687.

21.    BERKSHIRE failed to cure the alleged violations of Fla. Stat. § 624.155 and failed to fully pay the damages, interest, and/or judgment within sixty (60) days of receipt of February 7, 2023 Civil Remedy Notices as required by Fla. Stat. § 624.155.

3

## COUNT I

### Unfair Claims Practices pursuant to Florida Statute § 624.155 and § 626.9541

22.     Plaintiffs re-allege the allegations contained in Paragraphs one (1) through twenty-one (21) as if fully set forth herein, and further alleges the following:

23.     BERKSHIRE is engaged in the business of insurance and is subject to Florida Statues, Florida Regulations and Florida Law.

24.     Pursuant to Florida Statute § 624.155(1)(b)(1), BERKSHIRE had a duty to attempt, in good faith, to settle claims when, under all circumstances, it could and should have done so, had it acted fairly and honestly towards its Insured, and with due regard for the insured's interest.

25.     BERKSHIRE breached these duties from Florida Statue § 624.155 in the claims handling of Plaintiff's insurance claim for, inter alia, financial gain and profit, to wit:

> A)     BERKSHIRE knew or should have known that the Plaintiff were owed Insurance benefits but refused to tender owed monies.
>
> B)     BERKSHIRE could have and/or should have timely tendered the insurance benefits that were due and owing to the Plaintiffs had it conducted a fair and reasonable claim investigation.

26.     BERKSHIRE failed to treat the Plaintiff fairly and/or honestly and with due regard for their interest by failing to pay sufficient funds to restore the Plaintiff's property to its pre-loss condition, when BERKSHIRE knew or should have known that the damages were covered under the Policy.

27.     BERKSHIRE had a duty to adopt and implement standards for the proper investigation and settlement of claims, pursuant to Florida Statute § 626.9541(1)(i)(3)(a).

4

28.     BERKSHIRE breached this duty imposed by Florida Statute § 626.9541(1)(i)(3)(a) by not property investigating this claim.

29.     BERKSHIRE breached these duties from Florida Statute § 626.9541(1)(i) by misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue, as the exclusions relied upon BERKSHIRE were not applicable to this case.

30.     The actions alleged in this Complaint demonstrate BERKSHIRE failure to comply in good faith with the terms and conditions of the Policy and/or its statutory duties of good faith.

31.     The actions damaged the Plaintiff, including but not limited to any out of pocket expenses, interest and pre-judgment interest, Attorney's fees and costs.

32.     As a result of BERKSHIRE's actions, Plaintiff was forced to retain the undersigned attorneys and agreed to pay reasonable fees and costs, which are compensable.

**WHEREFORE**, Plaintiff demands a judgment against BERKSHIRE for:

a)      All general, compensatory, and consequential damages;

b)      Interest and pre-judgment interest;

c)      Post-judgment interest;

d)      Court costs, expert fees and attorneys' fees pursuant to F.S. 624.155(4).

e)      Disgorgement of all unlawful and illegitimate monies Defendant profited from its unfair claims handling practices, including but not limited to interest earned on Plaintiff's monies; and

f)      All such other relief to which the Plaintiff may be justly entitled; and

g)      Trial by jury of all issues so triable as a matter of right.

5

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff, AAB TRANSPORT, INC, demands trial by jury of all issues so triable.

**Respectfully Submitted by,**
**Your Insurance Attorney, PLLC.**
2601 South Bayshore Drive 5th Floor.
Coconut Grove, FL 33133
Phone No.: 1-888-570-5677
Fax: 1-888-745-5677
Email: YIA24@Yourinsuranceattorney.com

By*: /s/ Peter Diamond*
Peter Diamond, Esq.
Florida Bar No. 0180051

# EXHIBIT A

## APPRAISAL AWARD

We the undersigned pursuant to our appointment as appraisers and umpire in the matter of appraisal which occurred on the date of loss of 09/28/2022.

**DO HEREBY CERTIFY** that we have truly and conscientiously performed the duties assigned to us in this appraisal involving the following policy of insurance:

| | |
|---|---|
| Insurance Co: | biBERK Insurance |
| Claim #: | N9BP075587-001-001-001 |
| Policy #: | N9PB075587 |
| Insured: | AAB Transport, Inc. |
| Loss Location: | 4352 El Jobean Road, Port Charlotte, FL 33953 |

**WE DO HEREBY FURTHER CERTIFY** that we have heard and seen all of the evidence offered by both the insured and the insurance company and have appraised and determined the amount of loss as follows:

| Item of Appraisal [*] | RCV Loss | Depreciation | ACV Loss |
|---|---|---|---|
| Dwelling [**] | $271,688.72 | $6,799.61 | $264,889.11 |
| Detached Building - Carport [**] | $11,118.33 | $373.61 | $10,744.72 |
| Detached Building – Garage/Shed [**] | $8,037.62 | $317.52 | $7,720.10 |
| Mold [**] | $7,237.60 | $0.00 | $7,237.60 |
| Law & Ordinance [**] | $10,000.00 | $0.00 | $10,000.00 |
| Loss of Rents/Income [**] | $24,300.00 | $0.00 | $24,300.00 |

[*] **Note:** If item is not listed it was not appraised at this time and remains open; including but not limited to: Roof Tarping/Re-Tarping and/or Wrapping and EMS/Dry-Out.
[**] **Note:** Per attached estimate which is an integral part of this award.

### And we do hereby award the foregoing sums as our appraisal award.

This appraisal award shall be valid and binding upon all parties concerned when at least two of the three parties named below concur in a decision, as evidenced by their signatures below. This award is made without any consideration of any deductible amount, prior payments issued to the insured or any other terms, conditions, provisions or exclusions of the above policy. All items of appraisal have been addressed, and all dollar amounts listed above are final per each listed item and/or coverage category. All executed copies shall be considered as counterpart originals.

**WE AGREE TO THE ABOVE:**


_____     _____
Appraiser for the Insured – Julio Iriarte           Date

*Holly Garrett*
Holly Garrett (May 20, 2023 21:47 EDT)
_____     _____
Appraiser for the Insurer – Holly Garrett            Date


_____     05/22/2023
Neutral Umpire – Patrick Perez                        Date

7

## EXHIBIT B



**FLORIDA**
DEPARTMENT OF
**FINANCIAL SERVICES**

### Civil Remedy Notice of Insurer Violations

Filing Number:        673712

Filing Accepted:      2/7/2023

Warning! Information submitted as part of this civil remedy notice is a public record. Data entered into this form will be displayed on the DFS website for public review. Please DO NOT enter Social Security Numbers, personal medical information, personal financial information or any other information you do not want available for public review.

☑  The submitter hereby states that this notice is given in order to perfect the rights of the person(s) damaged to pursue civil remedies authorized by Section 624.155, Florida Statutes.

### Complainant

| | |
|---|---|
| Name: | AAB TRANSPORT, INC. |
| Street Address: | 4352 EL JOBEAN ROAD |
| City, State Zip: | PORT CHARLOTTE, FL  33953 |
| Email Address: | FIREFIGHTER12492@AOL.COM |
| Complainant Type: | Insured |

### Insured

| | |
|---|---|
| Name: | AAB TRANSPORT, INC. |
| Policy #: | N9BP075587 |
| Claim #: | N9BP075587-001-001-001 |

### Attorney

| | |
|---|---|
| Name: | ANTHONY M LOPEZ |
| Street Address: | 2601 S BAYSHORE DRIVE, 5TH FLOOR |
| City, State Zip: | COCONUT GROVE, FLORIDA  33133 |
| Email Address: | AML@YOURINSURANCEATTORNEY.COM |

### Notice Against

| | |
|---|---|
| Insurer Type: | Authorized Insurer |
| Name: | BERKSHIRE HATHAWAY DIRECT INSURANCE COMPANY |

Please identify the person or persons representing the insurer who are most responsible for/knowledgeable of the facts giving rise to the allegations in this notice.

JOHN SCHAEFER; HOLLY GARRETT

| | |
|---|---|
| Type of Insurance: | Commercial Property & Casualty |

DFS-10-363
Rev. 10/14/2008

8


**FLORIDA**
DEPARTMENT OF
**FINANCIAL SERVICES**

**Civil Remedy Notice of Insurer Violations**

Filing Number:        673712

**Reason for Notice**

Reasons for Notice:

> **Claim Delay**
> **Unsatisfactory Settlement Offer**
> **Unfair Trade Practice**

PURSUANT TO SECTION 624.155, F.S.  please indicate all statutory provisions alleged to have been violated.

| | |
|---|---|
| 624.155(1)(b)(1) | Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests. |
| 624.155(1)(b)(3) | Except as to liability coverages, failing to promptly settle claims, when the obligation to settle a claim has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage. |
| 626.9541(1)(i)(3)(a) | Failing to adopt and implement standards for the proper investigation of claims. |
| 626.9541(1)(i)(3)(b) | Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue. |
| 626.9541(1)(i)(3)(c) | Failing to acknowledge and act promptly upon communications with respect to claims. |
| 626.9541(1)(i)(3)(e) | Failing to affirm or deny full or partial coverage of claims, and, as to partial coverage, the dollar amount or extent of coverage, or failing to provide a written statement that the claim is being investigated, upon the written request of the insured within 30 days after proof-of-loss statements have been completed. |
| 626.9541(1)(i)(3)(f) | Failing to promptly provide a reasonable explanation in writing to the insured of the basis in the insurance policy, in relation to the facts or applicable law, for denial of a claim or for the offer of a compromise settlement. |
| 626.9541(1)(i)(3)(g) | Failing to promptly notify the insured of any additional information necessary for the processing of a claim. |
| 626.9541(1)(i)(3)(h) | Failing to clearly explain the nature of the requested information and the reasons why such information is necessary. |
| 626.9541(1)(i)(4) | Failing to pay undisputed amounts of partial or full benefits owed under first-party property insurance policies within 60 days after an insurer receives notice of a residential property insurance claim, determines the amounts of partial or full benefits, and agrees to coverage, unless payment of the undisputed benefits is prevented by factors beyond the control of the insurer as defined in s. 627.70131(5). |
| 626.9541(1)(i)(3)(i) | Failing to pay personal injury protection insurance claims within the time periods required by s. 627.736(4)(b). |

DFS-10-363
Rev. 10/14/2008

9

Reference to specific policy language that is relevant to the violation, if any. If the person bringing the civil action is a third party claimant, she or he shall not be required to reference the specific policy language if the authorized insurer has not provided a copy of the policy to the third party claimant pursuant to written request.

**FLORIDA STATUTES VIOLATED (continued)**
§627.70131(5)(a) - Within 90 days after an insurer receives notice of an initial, reopened, or supplemental property insurance claim from a policyholder, the insurer shall pay or deny such claim or a portion of the claim unless the failure to pay is caused by factors beyond the control of the insurer which reasonably prevent such payment. Any payment of an initial or supplemental claim or portion of such claim made 90 days after the insurer receives notice of the claim, or made more than 15 days after there are no longer factors beyond the control of the insurer which reasonably prevented such payment, whichever is later, bears interest at the rate set forth in s. 55.03. Interest begins to accrue from the date the insurer receives notice of the claim. The provisions of this subsection may not be waived, voided, or nullified by the terms of the insurance policy. If there is a right to prejudgment interest, the INSUREDS shall select whether to receive prejudgment interest or interest under this subsection. Interest is payable when the claim or portion of the claim is paid. Failure to comply with this subsection constitutes a violation of this code. However, failure to comply with this subsection does not form the sole basis for a private cause of action.

**FLORIDA ADMINISTRATIVE CODE SECTIONS VIOLATED**
69B-220.201(3) – Code of Ethics. The work of adjusting insurance claims engages the public trust. An adjuster shall put the duty for fair and honest treatment of the claimant above the adjuster's own interests in every instance. The following are standards of conduct that define ethical behavior, and shall constitute a code of ethics that shall be binding on all adjusters:

69B-220.201(3)(b) – An adjuster shall treat all claimants equally.

69B-220.201(3)(b)1 – An adjuster shall not provide favored treatment to any claimant.

69B-220.201(3)(b)2. – An adjuster shall adjust all claims strictly in accordance with the insurance contract.

69B-220.201(3)(c) – An adjuster shall not approach investigations, adjustments, and settlements in a manner prejudicial to the INSUREDS.

69B-220.201(3)(d) – An adjuster shall make truthful and unbiased reports of the facts after making a complete investigation.

69B-220.201(3)(e) – An adjuster shall handle every adjustment and settlement with honesty, integrity, and allow a fair adjustment or settlement to all parties without any remuneration to himself except that to which he is legally entitled.

69B-220.201(3)(f) – An adjuster, upon undertaking the handling of a claim, shall act with dispatch and due diligence in achieving a proper disposition of the claim.

69B-220.201(3)(m) – An adjuster shall not knowingly fail to advise a claimant of the claimant's claim rights in accordance with the terms and conditions of the contract and of the applicable laws of this state. An adjuster shall exercise care not to engage in the unlicensed practice of law as prescribed by the Florida Bar.

See Subject Policy: BERKSHIRE HATHAWAY DIRECT INSURANCE COMPANY
Declarations Page Section I:
Building limit of $685,440.00
Section I – Property; Coverage; We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

E. Property Loss Conditions / 2. Appraisal
Business Income & Extra Expense; Actual Loss Sustained up to 12 Months
Businessowner's Coverage Form (BP 00 03 01 06), Page 20 and 21 of 47: E. Property Loss Conditions, 3. Duties In The Event Of Loss Or Damage

To enable the insurer to investigate and resolve your claim, describe the facts and circumstances giving rise to the insurer's violation as you understand them at this time.

Facts and circumstances giving rise to the violation.
Enter all words or phrases (one at a time) that should be used to filter.

DFS-10-363
Rev. 10/14/2008

10

1) Failure to pay claim in full; 2) failure to promptly investigate claim; 3) failure to properly investigate claim; 4) failure to adjust loss; 5) failure to act in due diligence and good faith to resolve claim; 6) placing financial interest of insurer before that of policy holders and claimants; 7) failure to properly train, evaluate and manage adjusters; 8) looking for ways to deny coverage, pay less, delay payment and otherwise "low ball" or "stone wall" claim; 9) the reasons for this may be attributed to improper training, supervision, and/or motivation of adjusters and claims supervisors to promptly and fairly investigate, adjust and pay full benefits available to all beneficiaries.

In Florida, the work of adjusting insurance claims engages the Public Trust. BERKSHIRE HATHAWAY DIRECT INSURANCE COMPANY ("BERKSHIRE") has breached this duty by its failure or refusal to acknowledge its Insured's claim of loss.

BERKSHIRE has failed to create and implement adequate guidelines for proper investigation to evaluate claims handling and for training and supervision of employees resulting in statutory violations as set forth above. BERKSHIRE has failed and/or refused to thoroughly, accurately, and completely investigate and evaluate the Insured's insurance claim for damages.

To date, notwithstanding the Insured's pleas, BERKSHIRE has continued to refuse to acknowledge its obligation to acknowledge and pay the full amount of its Insured's claim.

This complaint is made on behalf of the Insured, AAB Transport, Inc. ("the INSUREDS"). Further, this complaint is a statement that notice is hereby given in order to perfect the right to pursue the civil remedy authorized and pursuant to Florida Statute §624.155.

In consideration of the premium paid to it by the INSURED, BERKSHIRE issued a Homeowners policy, Policy No. N9BP075587 (hereinafter referred to as "The Policy"), to the INSURED wherein the insurance policy provided coverage for all losses, including windstorm.

The policy was in full force and effect at the time the damage occurred as a result of the heavy winds and rains created by Hurricane Ian, and the ensuing damages as a direct result thereof, to the insured premises located at 4352 El Jobean Road, Port Charlotte, Florida 33953 on or about September 28, 2022. A claim for business interruption was also made at the same time.

On or about September 28, 2022, the INSURED suffered damages due to the heavy winds and rains associated with Hurricane Ian. The INSURED notified BERKSHIRE of the damages and opened a claim pursuant to the terms and conditions of the Policy.

In response, BERKSHIRE assigned the claim to its representative, Jake Annala, as the general adjuster to investigate the Loss. BERKSHIRE'S representative visited the insured property and performed a cursory and inadequate investigation of the damaged property.

On or about December 8, 2022, BERKSHIRE acknowledged coverage for the loss, but grossly undervalued the damages for a net payment of $91,291.35, after the application of the 5% deductible totaling $34,272 (Coverage Limitation $685,440 x 5% = $34,272), The INSURED, by and through their representatives, demanded Appraisal regarding the valuation of the claim.

On December 16, 2022, following the demanding of Appraisal, BERKSHIRE appointed Ms. Holly Garrett as its Appraiser and the INSURED appointed Mr. Julio Iriarte as its Appraiser. On the same day, Mr. Iriarte requested a recommended umpire list from Ms. Garrett. Ms. Garrett refused to participate in good faith in the appraisal process as required. Ms. Garrett then unilaterally showed up to the Insured Property without advising of same and began to harass the tenants at the Property. Mr. Iriarte advised Ms. Garrett that her actions were inappropriate and requested to convene at a different time to discuss the claim. At that point, Ms. Garrett stated that she wanted to have an engineer inspect on behalf of BERKSHIRE, but had her husband call and advised the tenants that if the tenants did not provide immediate access to the engineer, that BERKSHIRE would deny the claim. Ms. Garrett again unilaterally scheduled an inspection at the Property for the engineer to appear – without appropriate notice. Following the engineer's inspection, Ms. Garrett made accusatory allegations stating that the tenants had received their rent payments from their own insurance carriers, which is the farthest from the truth as all tenants have provided sworn testimony by way of affidavit stating that their rent has not been paid by their insurance carriers. Ms. Garrett further accused Mr. Iriarte of cashing the $50,000 initial advance sent to the INSURED, however, from the images Ms. Garrett herself provided, again – it is the farthest from the truth as the check was endorsed without recourse. Ms. Garrett continuously made false statements regarding the appraisal process as well as accusatory statements such as Mr. Iriarte cashing the checks himself and the INSURED bringing forth a fraudulent loss of use claim.

Mr. Iriarte then respectfully requested that BERKSHIRE remove Ms. Garrett as their appraiser, as it was clear that Ms. Garrett could not act in a professional manner. Her continued threats and unreasonable deadlines were certainly not in the best interest of the INSURED.

On January 4, 2023, at 2:34PM, Ms. Garrett demanded that Mr. Iriarte appoint a new appraiser on behalf of the INSURED, after it was clear that Mr. Iriarte had been designated the appraiser from the beginning.

On January 5, 2023, Mr. Iriarte withdrew the appraisal demand as it was clear that BERKSHIRE and its appraiser, Ms. Garrett, were acting in bad faith. After Mr. Iriarte withdrew from the appraisal proceed, the INSURED and Mr. Iriarte himself requested that Mr. Schaefer contact them via telephone to discuss, but Mr. Schaefer refused to contact them. Finally, after repeated pleas from the INSURED and Mr. Iriarte, Mr. Schaefer finally contacted both the INSURED and Mr. Iriarte and simply advised he had to speak to management regarding their concerns.

On January 12, 2023, Mr. Iriarte then again requested that BERKSHIRE appoint a new appraiser, in order to proceed with the appraisal process and conclude the matter. On January 18, 2023, Mr. Schaefer responded, refusing to appoint a new appraiser, stating that Ms. Garrett has not acted in bad faith. The INSURED respectfully disagrees.

To date, the appraisal process is at a stand-still because BERKSHIRE continuously refuses to appoint a new appraiser in order to proceed.

Further, the INSURED's representative, Mr. Iriarte, prepared an estimate of damages in the amount of $387,346.59. There is clear evidence that the damages caused by Hurricane Ian exceed the amount of damages valued by BERKSHIRE.

Since the beginning of the subject claim, BERKSHIRE has engaged in a pattern of delay and reckless disregard for the INSURED'S rights. The actions of BERKSHIRE listed herein have been continuing in nature and given the totality of the circumstances, which includes BERKSHIRE'S adjustment, actions and/or omissions post the filing of this CRN. The INSURED contends that given the past experience in this matter with BERKSHIRE, it is reasonably foreseeable that BERKSHIRE'S current actions will extend to its entire conduct in the handing of their claim, including the acts or omissions of BERKSHIRE and/or its representatives, until the final resolution of their claim. As such, the INSURED contends adequate notice has been given should BERKSHIRE'S actions and violations listed herein continue after the expiration of this notice.

BERKSHIRE has failed and/or refused to settle the claim when it could and should have done so had it acted fairly and honestly towards the INSURED and has failed to take into account the information and evidence provided that contradict its decisions.
BERKSHIRE'S conduct has been reckless and unfair to the INSURED and has caused and continues to cause additional damages throughout the property. This is evidenced by the delay in paying the claim and the failure of BERKSHIRE to evaluate the claim in total.

To date, BERKSHIRE has failed and/or refused to provide the INSUREDS with all the necessary insurance benefits due and owing and has not tendered the full amount needed to repair the Property despite knowing that the INSUREDS has sustained covered damages to their insured property.

As BERKSHIRE must admit, it is implied within every insurance policy a duty of good faith and fair dealings. In an insurance contract, each party is prevented from interfering with the other's right to benefit from the contract. The obligations of good faith and fair dealings encompass qualities of decency and humanity inherent in its responsibilities as a fiduciary. BERKSHIRE is bound to conduct itself with the utmost good faith for the benefit of the INSUREDS. However, BERKSHIRE has failed to comply with the obligations in connection with this claim and has never looked at the claim or the contract for insurance with good faith and fair dealing. Instead, BERKSHIRE has looked for ways not to pay the claim in full and these actions have been to the detriment of the INSUREDS.

The adjusters assigned to this claim have a duty to adjust and treat all claims equally. Since the beginning of this claim the representatives on behalf of BERKSHIRE have approached this investigation in a manner prejudicial to the INSURED. BERKSHIRE is using either untrained or improperly trained adjusters in connection with this claim. BERKSHIRE should have been adjusting the loss with the INSUREDS but instead, it was looking for ways not to pay the claim in full. If BERKSHIRE handles all the claims in the manner in which the INSURED'S claim was adjusted, then it is improperly handling all claims.

BERKSHIRE has refused and/or failed to comply with the Policy. Under The Policy, BERKSHIRE was to timely tender undisputed insurance benefits to the INSURED. BERKSHIRE has failed and/or refused to

DFS-10-363
Rev. 10/14/2008

timely tender owed insurance benefits, undisputed or otherwise. This is a breach of The Policy.

BERKSHIRE has refused and/or failed to cooperate and/or "Adjust the Loss" by cooperating with the INSURED during the claims adjustment process in compliance with the Policy language and Appraisal provision. This is a breach of the Policy.

The concept of insurance is that insurance is the insurer's granting of timely and prompt indemnity or security against a contingent loss. Florida Statute §624.02 defines "insurance" as a contract whereby one undertakes to indemnify another or pay or allow specified amount or a determinable benefit upon determinable contingencies. Inherent is the fact that payment must be made timely and promptly so that the INSURED may mitigate their damages and to put her back into the position she was in prior to the loss as quickly as possible. BERKSHIRE has breached this duty.

BERKSHIRE has refused and/or failed to tender all insurance proceeds to the INSURED upon demand. BERKSHIRE'S refusal and/or failure to settle the insurance claim when under all circumstances it could have and should have done so had it acted fairly and honestly towards the INSURED is wrongful conduct. Furthermore, the INSURED contend that BERKSHIRE'S adjusters and/or representatives financially benefit by such wrongful conduct.

It is clear that BERKSHIRE'S adjusters have also failed to adhere to insurance industry rules and guidelines when adjusting a first party claim. It is also evident that BERKSHIRE violated the Florida unfair claims practices, the adjuster's ethical code of conduct, and acted irresponsibly in the handling of its Insured's claims. In this case, the INSURED paid a hefty premium for a service, the service is called claims adjusting

The claim professional must dispense his or her knowledge and skill for the benefit of society. The general public expects claims representatives to pay all legitimate claims promptly and fairly. The claim professional must harness all of his or her knowledge and expertise to accomplish the objectives of the claim function. He or she must also adhere to the highest degree of ethical conduct. In addition to interacting with other insurance personnel and service providers in a professional manner, the claims professional must deal with public's and regulator's expectations. Insurance Companies provide such a vital and necessary service to society that the selling and servicing of insurance is imbued with a public trust. James J. Markham, Kevin M. Quinley, Layne S. Thompson, "The Claims Environment", Insurance Institute of America, 1st ed., 1993.

Accordingly, BERKSHIRE has a contractual and statutory obligation to investigate all possible bases which might support the INSURED'S claim and cannot deny a claim without thoroughly investigating the foundation for its denial or basis for withholding insurance benefits. BERKSHIRE violated its obligations here.

-BERKSHIRE has a contractual and statutory obligation to make a perfunctory investigation, not ignoring evidence that would support the INSURED'S claim. BERKSHIRE violated its obligations here.

-BERKSHIRE has a contractual and statutory obligation not to look the other way when confronted with facts revealing the possibility of coverage and resisting reasonable interpretations of its policy. BERKSHIRE violated its obligations here.

-BERKSHIRE has a contractual and statutory obligation not deny the claim based on standards known to be impermissible or on an interpretation contrary to established law. BERKSHIRE violated its obligations here.

These actions and violations were either done intentionally or as the result of BERKSHIRE'S failure to adopt and implement the proper standards of the investigation and adjustment of claims.

Overall, BERKSHIRE'S investigation of the claim was inadequate and contrary to its obligations under the insurance policy and Florida law.

The INSUREDS have done everything legally requested by BERKSHIRE to date. To cure the violations set forth in this Civil Remedy Notice, BERKSHIRE must now agree to acknowledge its duties and obligations under the law in adjusting its Insured's claim, and tender rightfully owed insurance benefits to return the INSURED to their pre-loss condition.

Further, to cure the violations set forth in this Civil Remedy Notice, the INSURED hereby requests that BERKSHIRE tender at this time, or prior to the expiration of the statutory cure period, the amount of the INSURED'S damage estimates and demand which accurately reflects the true nature and extent of the INSURED'S damages. Therefore, BERKSHIRE should tender: (i) $ 387,346.59 (less prior payments and/or deductible) for a total payment of $261,783.24, separate and apart from the loss of use business interruption

damages.

The concept of insurance is that insurance is the insurer's granting of timely and prompt indemnity or security against a contingent loss. Florida Statute §624.02 defines "insurance" as a contract whereby one undertakes to indemnify another or pay or allow specified amount or a determinable benefit upon determinable contingencies. Inherent is the fact that payment must be made timely and promptly so that the INSUREDS may mitigate their damages and to put them back into the position she was in prior to loss as quickly as possible. BERKSHIRE breached this duty.

The INSURED was and still is forced to expend out of pocket monies to submit her insurance claim, e.g., retaining an attorney and experts, paying out of pocket for alternate housing, to force BERKSHIRE to honor its obligations under the insurance policy to pay all the insurance proceeds due and owing the INSURED.

Therefore, to cure the defects outlined in this Civil Remedy Notice, BERKSHIRE Select Insurance Company must:

(1) Create and implement adequate guidelines for proper investigation and evaluation as to claims handling and for the training and supervision of employees, which will avoid future statutory violations as set forth above, and above to avoid this from occurring in the future;

(2) BERKSHIRE must create and implement adequate guidelines for the proper investigation and evaluation of these type of claims, and for the training and supervision of employees with regard to these types of claims to ensure that BERKSHIRE'S claims handling procedures with regard to these types of losses are adequate to stop further insureds from being treated unfairly and wrongfully;

(3) BERKSHIRE must assist the INSURED in mitigating its damages;

(4) BERKSHIRE must act fairly and honestly towards the INSURED and with due regard for her interests in attempting to settle the INSURED'S claim;

(5) BERKSHIRE must pay the INSURED the fair value of her insurance claim;

(6) BERKSHIRE must immediately tender all insurance proceeds due and owing the INSURED that are fairly owed under their insurance policy that would reasonably place the INSURED back to her pre-loss condition;

(7) BERKSHIRE must agree to reimburse the INSURED for her expenses incurred by having to retain an attorney to present and defend her claim; and

(8) BERKSHIRE must tender the amount of the INSURED'S damage estimates and demands, for a total of $261,783.24, which accurately reflects the true nature and extent of their damages, separate and apart from the loss of use business interruption damages.

## Comments

| User Id | Date Added | Comment |
|---|---|---|
| phernandez@hinshawlaw.com | 04-07-2023 | Hinshaw & Culbertson LLP, on behalf of Berkshire Hathaway Direct Insurance Company, responded to the Civil Remedy Notice in correspondence dated April 7, 2023, to AAB Transport, Inc. c/o Anthony M. Lopez, Esq. denying it acted in bad faith. |

DFS-10-363
Rev. 10/14/2008